UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONXAI RASAKHAMDEE,<br><br>                    Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>                    Respondents. | Case No.: 3:25-cv-02816-RBM-DEB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Docs. 1, 3]** |

     Pending before the Court are Petitioner Sonxai Rasakhamdee's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") (Doc. 1) pursuant to 28 U.S.C. § 2241 and Motion and Memorandum of Law in Support of Temporary Restraining Order ("TRO Motion") (Doc. 3.)  The Petition and TRO Motion seek the same relief—Petitioner's release from detention.  Respondents filed a Return in Opposition to Petitioner's Habeas Petition and Opposition to Petitioner's Motion for Temporary Restraining Order ("Response") (Doc. 8), and Petitioner filed a Traverse in Support of Petition for Writ of Habeas Corpus ("Reply") (Doc. 9.)  Having reviewed these filings, and for the reasons set forth below, the Petition is **GRANTED** and the TRO Motion is **DENIED AS MOOT**.

# I. BACKGROUND

## A. Factual Background

Petitioner, the son of Lao parents, was born in a refugee camp in Thailand. (Doc. 1 at 2, 27 .)[1] He fled to the United States with his father in 1990 and soon after became a lawful permanent resident. (*Id.*) In 1996, when he was about 17 years old, Petitioner was convicted of second-degree murder. (*Id.* at 27.) His conviction was overturned on appeal, and Petitioner then pled guilty to manslaughter. (*Id.*) On July 20, 2011, an immigration judge ordered Petitioner removed to Laos. (*Id.*; Doc. 8-2 at 6.) Because ICE was unable to obtain travel documents for Petitioner, he was released on an order of supervision on October 14, 2011. (Doc. 1 at 4; Doc. 8 at 2.) Since being released, Petitioner has complied with all the conditions of his release and has not been convicted of any other offenses. (Doc. 1 at 4, 27.)

On September 15, 2025, ICE arrested Petitioner at a check-in appointment required by his order of supervision. (*Id.*) At the time, ICE "did not tell [Petitioner] why they were revoking [his] supervision." (Doc. 1 at 27.) The following day, ICE provided Petitioner with a Notice of Revocation of Release informing Petitioner that his order of supervision was revoked upon "a determination that there are changed circumstances in [his] case." (Doc. 8 at 3; Doc. 8-2 at 26.) On October 20, 2025, ICE Enforcement and Removal Operations ("ERO") submitted a travel document request for Petitioner "to the Laos Unit of ERO's Removal and International Operations," though it has not yet sent any request to the Lao embassy. (Doc. 8 at 3.) On October 29, 2025, ICE interviewed Petitioner. (*Id.*) According to the sworn declaration of Deportation Officer Jason Cole, ICE "is not seeking to remove Petitioner to a third country." (Doc. 8-2 [Declaration of Jason Cole] ("Cole Decl.") ¶ 13.) ICE believes "there is a significant likelihood of Petitioner's removal to Laos on or before March 1, 2026." (*Id.* ¶ 20.)

---

[1] The Court cites the CM/ECF electronic pagination unless otherwise noted.

B. **Procedural Background**

On October 21, 2025, Petitioner filed the Petition against Respondents Kristi Noem, Pamela Bondi, Todd Lyons, Jesus Rocha, and Christopher LaRose (collectively, "Respondents"). (Doc. 1.) The same day, Petitioner filed a Motion for Appointment of Counsel (Doc. 2) and the TRO Motion. (Doc. 3). On October 24, 2025, the Court ordered Respondents to show cause why the Petition and accompanying TRO Motion should not be granted by filing a written response. (Doc. 4 at 2–3.) On October 29, 2025, Respondents filed the Response. (Doc. 8.) On October 31, 2025, Petitioner filed the Reply. (Doc. 9.)

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III. DISCUSSION

Petitioner argues that his detention unlawfully violates: (1) the regulations set forth in 8 C.F.R. § 241.4(l) and § 241.13(i); (2) the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (3) the Fifth Amendment. (Doc. 1 at 2, 8–18.) Petitioner also claims ICE may not remove him to a third country "without providing an opportunity to assert fear of persecution or torture before an immigration judge." (*Id.* at 3, 18–21.)

Respondents argue first that Petitioner is jurisdictionally barred from bringing the entire Petition under 8 U.S.C. § 1252(g), and the third-country claim because "there is no controversy concerning third-country resettlement for this Court to resolve." (Doc. 8 at 3–5.) Respondents argue second that Petitioner's ongoing re-detention falls within the six-

month detention period presumptively reasonable under *Zadvydas* or, alternatively, that ICE has shown a significant likelihood of Petitioner's removal to Laos. (*Id.* at 7–9.) Respondents argue third that even if ICE failed to comply with the regulatory requirements when it re-detained Petitioner, Petitioner cannot establish that he was prejudiced by such violations. (*Id.* at 11–14.)

A. **Jurisdiction**

As the Court has an obligation "to determine that [it has] jurisdiction before proceeding to the merits" of any case, it will first address Respondents' jurisdictional argument. *Lance v. Coffman*, 549 U.S. 437, 439 (2007); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). For the reasons set forth below, the Court finds that it has jurisdiction over Petitioner's claims.[2]

Respondents argue that the Court lacks jurisdiction to hear the Petition under 8 U.S.C. § 1252(g). (Doc. 8 at 4–5.) This statutory bar against judicial review precludes the Court from exercising jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C § 1252(g). However, the Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

Petitioner does not challenge the legitimacy of his 2011 order of removal. Rather, he challenges the legality of his detention, which does not require judicial review of the Attorney General's decisions to commence proceedings, adjudicate cases, or execute removal orders. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. 2025) (noting courts have "distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal

---

[2] In light of the disposition herein, the Court does not reach Respondents' argument that the Court lacks jurisdiction to hear Petitioner's claim regarding third-country removal.

order, which are not.").

Respondents argue that Petitioner's claims "necessarily arise" from the Attorney General's decision to commence removal proceedings against him. (Doc. 8 at 5.) This interpretation of 8 U.S.C. § 1252(g) would "eliminate judicial review of immigration [detainees'] claims of unlawful detention . . . inconsistent with *Jennings v. Rodriguez* and the history of judicial review of the detention of noncitizens under 28 U.S.C. § 2241." *Sanchez v. LaRose*, Case No.: 25-cv-2396-JES-MMP, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *Zadvydas*, 533 U.S. at 699; *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022)). Accordingly, as other courts in this District have found in similar cases, the Court has jurisdiction to hear Petitioner's claims that his detention is unlawful under 28 U.S.C. § 2241. *See Sanchez*, 2025 WL 2770629, at *2; *Rokhfirooz v. LaRose et al.*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal. Sept. 15, 2025); *Palma v. LaRose*, Case No. 3:25-cv-1942-BJC-MMP (S.D. Cal. Aug. 11, 2025), ECF No. 14.

**B.    Due Process**

Petitioner challenges his detention as unlawful based on ICE's decision to revoke his release without providing the required notice or prompt interview. (Doc. 1 at 2, 8–11; Doc. 9 at 6–10.) Petitioner's claims therefore implicate the Due Process Clause. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. *Zadvydas*, 533 U.S. at 693–94. The fundamental requirements of due process are that a person be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The detention and release of noncitizens who are subject to a final order of removal are governed by 8 U.S.C. § 1231. Under that statute, "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days," also known as the "removal period." 8 U.S.C § 1231(a)(1)(A). "If

the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). Those regulations, which govern release and revocation of release of noncitizens subject to a final order of removal, are 8 C.F.R. § 241.4 and § 241.13. The Parties discuss both regulations in their filings, and it is unclear from the record which regulation controls. Under either regulation, however, ICE failed to comply with the required procedures, thereby violating Petitioner's due process rights.

### 1. Agency Regulations

In relevant part, release may be revoked under 8 C.F.R. § 241.4 when the Executive Associate Commissioner or a district director believes revocation "is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]." 8 C.F.R. § 241.4(l)(2)(iii). Section 241.13 provides "special review procedures" that apply where a noncitizen "has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future." § 241.13(a). Release may be revoked under this section if, "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2). Under both regulations, "[u]pon revocation," the noncitizen "will be notified of the reasons for revocation of his or her release or parole" and will be given "an initial informal interview promptly after his or her return to Service custody" to "respond to the reasons for revocation stated in the notification." § 241.4(l)(1); § 241.13(i)(3).

Petitioner argues that his detention is procedurally deficient because he was not provided (1) sufficient notice of the reasons for revocation of his release nor (2) a prompt interview to respond to those reasons. (Doc. 18 at 6; Doc. 19 at 4–5.)

As to notice, Petitioner argues that there was "no determination before or at his arrest that there are 'changed circumstances' such that there is 'a significant likelihood that [Petitioner] may be removed in the reasonably foreseeable future.'" (Doc. 1 at 10 (quoting § 241.13(i)(2).) He also argues that the Notice of Revocation of Release, which states only

that revocation was "based on a review of [Petitioner's] official alien file and a determination that there are changed circumstances in [his] case," is insufficient to meet the requirements of §241.4(l) and § 241.13(i). (Doc. 9 at 6–7 (quoting Doc. 8-2 at 26).)

Respondents argue not only that the Notice of Revocation of Release provided sufficient notice, but also that that Petitioner "was informed of the reason for his re-detention when he was served with and signed the Form I-205, Warrant of Removal/Deportation, on September 15, 2025." (Doc. 8 at 13 (citing Doc. 8-2 at 16).) The Warrant of Removal/Deportation reads:

> To any immigration officer of the United States Department of Homeland Security:
>
> Sonxai Rasakhamdee who entered the United States at Los Angeles, CA on December 12, 1990 is subject to removal/deportation from the United States, based upon a final order by: an immigration judge in exclusion, deportation, or removal proceedings and pursuant to the following provisions of the Immigration and Nationality Act:
>
> **This section was left blank on the Form I-205**
>
> I, the undersigned officer of the United States, by virtue of the power and authority vested in the Secretary of Homeland Security under the laws of the United States and by his or her direction, command you to take into custody and remove from the United States the above-named alien, pursuant to law[.]

(Doc. 8-2 at 16) (emphasis added).

Under the circumstances, the Court concludes Petitioner was not provided adequate notice of the reasons for revocation of his release. ICE's conclusory explanations for revoking Petitioner's release "did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at the post-detention informal interview." *Diaz v. Wofford*, Case No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *8 (E.D. Cal. Sept. 5, 2025) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing.") (citation

omitted)). The documents Respondents point to as evidence of notice indicate there was "a determination that there are changed circumstances in [Petitioner's] case" and that Petitioner "is subject to removal/deportation from the United States, based upon a final order by: an immigration judge." (Doc. 8-2 at 16, 26.) But "[s]imply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough." *Sarail A. v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2533673, at *10 (D. Minn. 2025). "Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition." *Id.*; *see also McSweeney v. Warden of Otay Mesa Det. Facility*, Case No.: 3:25-cv-02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (granting habeas petition because "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons").

Nor was Petitioner given the opportunity to respond "at a meaningful time." *Mathews*, 424 U.S. at 333. Petitioner was taken into ICE custody on September 15, 2025. (Doc. 1 at 4, 27.) Despite the requirement in 8 C.F.R. § 241.4(l) and § 241.13(i) that Petitioner be afforded "an initial informal interview promptly after his or her return to Service custody," he was not interviewed until October 29, 2025. (Doc. 8 at 3; Cole Decl. ¶ 12.) That six-week delay violated the promptness requirement. *See M.S.L. v. Bostock*, Civ. No. 6:25-cv-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (finding an informal interview given 27 days after petitioner was taken into ICE custody "cannot reasonably be construed as . . . prompt" and granting petition); *Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 20, 2025) (finding "the failure to provide an informal interview during that lengthy [two-month] period of time renders petitioner's re-detention unlawful"); *Sayvongsa v. Noem*, Case No.: 3:25-cv-02867-AGS-DEB (S.D. Cal. Oct. 31, 2025), ECF No. 10 (granting petition where petitioner

did not receive informal interview for three weeks after being re-detained).[3]  Thus, ICE violated its own regulations by failing to provide sufficient notice and a prompt interview.

### 2. Prejudice

Respondents argue that even assuming ICE violated agency regulations, "Petitioner could not establish that he was prejudiced by those omissions nor that a constitutional level violation has occurred." (Doc. 8 at 12 (citing *Brown v. Holder*, 763 F. 3d 1141, 1148–50 (9th Cir. 2014) ("[T]he mere failure of an agency to follow its regulations is not a violation of due process."); *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 n.8 (1978) (holding that *Accardi* "enunciate[d] principles of federal administrative law rather than of constitutional law").)

Where there is a regulatory violation, the Court should assess "whether violation of the regulation prejudiced the party involved." *Carnation Co. v. Sec'y of Labor*, 641 F.2d 801, 804 n.4 (9th Cir. 1981).  In the immigration context, "violation of a regulation does not invalidate a deportation proceeding unless the regulation serves a purpose of benefit to the [noncitizen]," *i.e.*, the violation "prejudiced interests of the [noncitizen] which were protected by the regulation."  *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979).

ICE's failure to comply with the requirements of § 241.4 and § 241.13 "prejudiced interests of [Petitioner] which were protected by the regulation[s]."  *Id.*  Both § 241.4 and § 241.13 were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release."  *Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025).  ICE deprived Petitioner of these due process protections when it failed to provide him with sufficient notice or a prompt interview to

---

[3]  *See Sayvongsa*, Case No.: 3:25-cv-02867-AGS-DEB, ECF No. 8-1 [Declaration of Deportation Officer Jason Cole] ¶¶ 8, 11 (noting the petitioner was detained on October 7, 2025 and interviewed on October 28, 2025).

respond to the reasons for revocation of his release. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Hernandez v. Sessions*, 872 F.3d 976, 995, 1000 (9th Cir. 2017) (holding that "[u]nlawful detention" by immigration officials constituted "irreparable harm"). Therefore, Petitioner was prejudiced by ICE's failure to comply with its own regulations.

     Government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Confederated Tribes & Bands of Yakima Indian Nation v. F.E.R.C.*, 746 F.2d 466, 474 (9th Cir. 1984) ("It is a well-known maxim that agencies must comply with their own regulations.") ICE failed to do so here. The Court's research indicates that every district court, except two,[4] to consider the issue has "determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz*, 2025 WL 2646165, at *4; *see, e.g.*, *K.E.O. v. Woosley*, Civil Action No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *7 (W.D. Ky. Sept. 4, 2025) (noting "courts across the country have ordered the release of individuals" in ICE custody where ICE "violated their own regulations"); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387–88 (D. Mass. 2017); *Grigorian v. Bondi*, CASE NO. 25-cv-22914-RAR, 2025 WL 2604573, at *10 (S.D. Fla. Sept. 9, 2025) ("The failure to provide [the petitioner] with an informal interview promptly after his detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates

---

[4] *See Louangmilith v. Noem*, Case No.: 25-cv-2502-JES-MSB, 2025 WL 2881578, at *3–4 (S.D. Cal. Oct. 9, 2025); *Medina v. Noem*, Case No. 25-cv-1768-ABA, 2025 WL 2306274, at *12 (D. Md. Aug. 11, 2025) (denying habeas petition without prejudice because the petitioner, unlike in this case, had "not pointed to authority showing that the remedy for a violation of [§ 241.4] (if such a violation has occurred) is release from detention.").

both ICE's own regulations and the Fifth Amendment Due Process Clause. This compels [the petitioner's] release."). This Court reaches the same conclusion. ICE's failure to comply with both 8 C.F.R. § 241.4 and § 241.13 violated Petitioner's due process rights. *See Diaz*, 2025 WL 2581575, at *7 ("DHS's failure to follow its own procedural regulations may constitute a due process violation."); *M.S.L.*, 2025 WL 2430267, at *11 ("ICE's failure to provide [the petitioner] with a timely Notice of Revocation or conduct an informal interview until nearly a month after taking her into custody is a grave violation of [the petitioner's] due process rights in that they deprived her both of meaningful notice and an opportunity to be heard.").

Accordingly, the Petition is **GRANTED**. In light of the disposition herein, the Court declines to address the remaining grounds in the Petition for seeking release.[5]

## IV.    CONCLUSION

For the foregoing reasons, the Petition (Doc. 1) is **GRANTED**. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to his preexisting Order of Supervision.
2. Petitioner's TRO Motion (Doc. 3) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATE: November 6, 2025

                                                  *[signature]*
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[5] Petitioner requested a hearing on any material, disputed facts. (Doc. 1 at 21.) Respondents did not address the need for a hearing, despite the Order to Show Cause requiring them to "mak[e] a recommendation regarding the need for an evidentiary hearing on the Petition." (Doc. 4 at 2.) Because the Court does not rely on any disputed facts in resolving the Petition, it finds that an evidentiary hearing is unnecessary.